651 A.2d 501

NEW JERSEY HOSPITAL ASSOCIATION, A NON-PROFIT CORPORATION OF THE STATE OF NEW JERSEY, ON BEHALF OF ITS MEMBERS, APPELLANT, v. LEONARD FISHMAN, COMMISSIONER OF HEALTH, STATE OF NEW JERSEY, AND THE ESSENTIAL HEALTH SERVICES COMMISSION, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted December 6, 1994—Decided January 17, 1995.

Before Judges LONG, ARNOLD M. STEIN and LEVY.

*Cohen, Shapiro, Polisher, Shiekman* and *Cohen,* attorneys for appellant (*Ivan J. Punchatz* and *Robynn Van Patten,* on the brief).

*Deborah T. Poritz,* Attorney General, attorney for respondents (*Joseph L. Yannotti,* Assistant Attorney General, of counsel; *Donald M. Palombi,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

LEVY, J.A.D.

New Jersey Hospital Association (NJHA) appeals from an assessment imposed on its members pursuant to *N.J.S.A.* 26:2H–18.62c, contending there was no statutory authority to impose and collect the assessment beyond June 30, 1994. NJHA points to the predecessor statute, *N.J.S.A.* 26:2H–18.47b, requiring the hospitals to pay a single assessment, as evidence of the Legislature's intent to similarly limit the efficacy of *N.J.S.A.* 26:2H–18.62c. We reject this claim and affirm the ongoing annual assessments. This conclusion is based on our examination of the relevant legislative history.

In 1978 the Legislature established a system for controlling health care costs, relying partly on hospital rate-setting. The rate-setting process was to be administered by the Hospital Rate Setting Commission (HRSC). *N.J.S.A.* 26:2H–4.1. Several years later, in 1986, the New Jersey Uncompensated Care Trust Fund (1986 Fund) was created, to be administered by the Department of Health (DOH) and funded from assessments remitted by hospitals. In pertinent part, the 1986 Fund was to be used to assist hospitals providing a disproportionate amount of services without compensation. *L.* 1986, *c.* 204; *see also N.J.S.A.* 26:2H–18.24b (explaining that the 1986 Fund provided unobstructed access to health care by uninsured patients who could not afford care). In 1991, the Legislature enacted the Health Care Cost Reduction Act, to ensure access to hospital care for indigent individuals, while assuring fiscal solvency of the hospitals through payments for uncompensated care shared by the various payers of hospital services. *N.J.S.A.* 26:2H–18.24. The Act created the New Jersey Health Care Trust Fund (Trust Fund) to supersede the 1986 Fund, but continue its functions, and distribute payments to

hospitals for providing uncompensated care. *N.J.S.A.* 26:2H–18.27; *N.J.S.A.* 26:2H–18.48. Additionally, a special fund was created, designated the Health Care Cost Reduction Fund (HCCR Fund), to provide support for various health care initiatives that would reduce the cost of uncompensated care in the State. *N.J.S.A.* 26:2H–18.47.

The following year, the Legislature enacted the Health Care Reform Act of 1992. It replaced the hospital rate-setting system with one of deregulation, and was based on enhancing competition so market forces would create incentives for hospitals to minimize costs. *N.J.S.A.* 26:2H–18.51. As part of this change, the Essential Health Services Commission (EHSC) was created by *N.J.S.A.* 26:2H–18.54a. In order to insure a fresh start under the new system, the EHSC was allocated to, but made independent of, the DOH. *N.J.S.A.* 26:2H–18.51f, *see also N.J.S.A.* 26:2H–18.54a. The HCCR Fund was replaced by the Health Care Subsidy Fund (Subsidy Fund) to provide financial support to hospitals furnishing the bulk of care to charity patients. *N.J.S.A.* 26:2H–18.51e.

The EHSC was directed to administer the Subsidy Fund and be responsible for the collection of a .53% assessment of each hospital's approved revenue base for 1992. *N.J.S.A.* 26:2H–18.62c. Although there are other sources of revenue for the Subsidy Fund, this appeal is only concerned with the funding to come from this particular hospital assessment. The applicable statute says:

> Notwithstanding any law to the contrary, each hospital whose revenue cap is established by the Hospital Rate Setting Commission in 1993 pursuant to P.L.1992, c. 160 (C. 26:2H–18.51 et al.) shall pay .53% of its approved revenue base for 1992, as that base was established by the Hospital Rate Setting Commission pursuant to P.L.1978, c. 83, to the commission for deposit in the Health Care Subsidy Fund. The hospital shall make monthly payments to the commission beginning July 1, 1993, except that the total amount paid into the Health Care Subsidy Fund plus interest shall not exceed $40 million per year. The commission shall determine the manner in which the payments shall be made.
>
> [*N.J.S.A.* 26:2H–18.62c.]

NJHA suggests this statute cannot compel yearly payments without using the specific word "annual" or "annually," and that "$40 million per year" is simply a guide for the EHSC to use when

deciding how hospitals may stretch their payments. We disagree as it is inescapable that the Legislature included the annual limitation as a cap on how much the EHSC could receive from the annual assessment *each year* during the open-ended period for payments "beginning July 1, 1993." This is in stark contrast to the language of the predecessor statute, which said:

> Notwithstanding any law to the contrary, each hospital whose rates are established by the commission pursuant to P.L.1978, c. 83 (C. 26:2H–1 et al.) shall pay .53% of its approved revenue base for 1991 to the Department of Health for deposit in the Health Care Cost Reduction Fund. The hospital shall make monthly payments to the department for a period of 24 months beginning on the first month following the date of enactment of this act, except that the total amount paid into the Health Care Cost Reduction Fund plus interest shall not exceed $40 million per year. The commissioner shall determine the manner in which the payments shall be made.
>
> [*N.J.S.A.* 26:2H–18.47b.]

Unlike the nonlapsing Subsidy Fund at issue here, the former revenue mechanism supported a fund intended to exist for only twelve months and then expire. *Assembly Approp. Comm., Statement to S. 3251 (enacted as L.* 1991, *c.* 187). First fixing the amount to be assessed as .53% of the 1991 approved revenue base, the Legislature then permitted that amount could be paid in 24 monthly installments to be deposited into the HCCR Fund. Moreover, the $40 million cap did not alter the amount to be paid by the hospitals.

The current statutory scheme differs by providing for an indeterminate period that simply runs "monthly ... beginning July 1, 1993," rather than "monthly ... for a period of 24 months." Such clear language needs no search for legislative intent. *In re Jamesburg High School Closing,* 83 *N.J.* 540, 547, 416 A.2d 896 (1980). Obviously the concept of a specific time limit, imposed in the predecessor statute, was deleted. Moreover, the Subsidy Fund is specifically made a "nonlapsing" fund, partly dedicated to "distribute charity care and other uncompensated care disproportionate share payments to hospitals...." *N.J.S.A.* 26:2H–18.58a. In order to make such payments, the statutory assessment scheme must continue until changed by the Legislature.

NJHA also argues that the use of the 1992 revenue base after fiscal year 1994 is unfair because hospital revenues are no longer guaranteed. We decline to follow that reasoning, leaving any future adjustments to the Legislature.

Lastly, we respect the determination of the Commissioner of Health that the language of *N.J.S.A.* 26:2H–18.62c mandates annual assessments. He posits that the need for continuous funding makes the Legislature's intention to require annual assessments obvious. Ordinarily we "give substantial deference to the interpretation of the agency charged with enforcing an act. The agency's interpretation will prevail provided it is not plainly unreasonable." *Merin v. Maglaki,* 126 *N.J.* 430, 436–37, 599 A.2d 1256 (1992). Given the different language describing the timing of the assessments, we conclude the Commissioner's interpretation of *N.J.S.A.* 26:2H–18.62c is not plainly unreasonable and merits deference.

Affirmed.