**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2602-15T4
             A-2815-15T4

IN THE MATTER OF NEW JERSEY
SPORTS AND EXPOSITION
AUTHORITY RESOLUTION 2016-70.

_____

Submitted October 3, 2017 — Decided November 9, 2017

Before Judges Yannotti and Mawla.

On appeal from the New Jersey Sports and
Exposition Authority.

Castano Quigley LLC, attorneys for appellant
Town of Kearny in A-2602-15 and respondent
Town of Kearny in A-2815-15 (Gregory J.
Castano, Jr., on the briefs).

Pearce Law, LLC, attorneys for respondent
Borough of North Arlington in A-2602-15 and
appellant Borough of North Arlington in
A-2815-15 (Randy T. Pearce and Gregory A.
Randazzo, of counsel and on the briefs).

Basile Birchwale & Pellino, LLP, attorneys for
intervenor Borough of Ridgefield (Stephen F.
Pellino, on the brief).

Lowenstein Sandler LLP, attorneys for
respondent New Jersey Sports and Exposition
Authority (James Stewart and Rachel Warren,
on the brief).

PER CURIAM

On January 14, 2016, the New Jersey Sports and Exposition Authority (Authority) adopted Resolution 2016-70 (2016 Resolution), which certified the 2016 meadowlands adjustment payments for constituent municipalities, pursuant to the Hackensack Meadowlands Agency Consolidation Act (Act), N.J.S.A. 10A-1 to -68. The Town of Kearny and the Borough of North Arlington appeal from the 2016 Resolution. Thereafter, we granted the Authority's motion to consolidate the appeals, and permitted the Borough of Ridgefield to intervene.[1]

For the reasons that follow, we conclude that Ridgefield may not challenge its 2015 adjustment payment; the Authority erred by failing to calculate the 2016 adjustment payments in the manner prescribed by N.J.S.A. 5:10A-59(a); and the Authority did not err by including a $1.1 million payment that North Arlington received in 2012 when determining the amount of North Arlington's pre-adjustment payment for 2012 and the adjustment payments for 2015 and 2016. Accordingly, we reverse Resolution 2016-70 and remand for recalculation of the 2016 adjustment payments in accordance with N.J.S.A. 5:10A-59(a).

---

[1] East Rutherford also was granted leave to intervene, but did not file a brief and is no longer participating in the appeal.

I.

The Hackensack Meadowlands District is comprised of fourteen constituent municipalities, which include Kearny, North Arlington, and Ridgefield. The Act provides in pertinent part for the establishment of an intermunicipal account and requires the Authority to compute the amounts that the constituent municipalities should pay to the account and be paid from the account each year. N.J.S.A. 5:10A—59(a). The Authority then must certify the adjustment payments for each constituent municipality. Ibid. The payments are

> determined by adding all the payments payable to that municipality from the intermunicipal account for school district service payments, guarantee payments, and apportionment payments, if any, and by subtracting therefrom the obligations of that municipality to the intermunicipal account, as calculated pursuant to [N.J.S.A. 5:10A-53 to -58]. The amount so derived shall be referred to as the meadowlands pre-adjustment payment. For calendar year 2015, the meadowlands adjustment payment shall be the average of the meadowlands pre-adjustment payments for calendar years 2012, 2013, and 2014. For calendar year 2016 and subsequent years, the meadowlands adjustment payment shall be the average of the meadowlands pre-adjustment payments for the prior three calendar years.

> [Ibid. (emphasis added).]

The adjustment payments are funded primarily through the Meadowlands Regional Hotel Use Assessment, which is imposed

pursuant to N.J.S.A. 5:10A-85(a). The Act provides that in the event the assessment generates insufficient revenue for the adjustment payments, the State Treasurer must provide the Authority with the funds needed to make up the shortfall. N.J.S.A. 5:10A-85(d).

For calendar year 2015, the Authority calculated the adjustment payments by taking the average of each municipality's pre-adjustment payments for 2013, 2014, and 2015. On January 30, 2015, the Authority adopted Resolution 2015-01, certifying the payments due to the constituent municipalities for that calendar year. Based on information received from a constituent municipality, the Authority revised the payments for 2015 and on April 16, 2015, adopted Resolution 2015-12, which certified a revised payment schedule for 2015.

The Authority then paid the designated amounts to the municipalities, as required by N.J.S.A. 5:10A-59(b). None of the constituent municipalities filed an appeal challenging the approved payments for 2015.

For calendar year 2016, the Authority calculated the adjustment payments using the average of the municipality's pre-adjustment payments for years 2014, 2015, and 2016. The Authority then adopted Resolution 2016-70 certifying the payments for 2016. These appeals followed.

4

On appeal, Kearny, North Arlington, and Ridgefield argue that the Authority erred by calculating the adjustment payments for 2016 because the Authority did not use the average of the pre-adjustment payments for the three prior calendar years, as required by N.J.S.A. 5:10A-59(a). Ridgefield challenges the 2015 adjustment payments for the same reason. In addition, North Arlington argues that the Authority erroneously calculated its 2016 adjustment payment by applying the amount of a payment North Arlington received in 2012 pursuant to a settlement of a tax appeal.

## II.

The Authority argues that Ridgefield is precluded from challenging its 2015 adjustment payment because it failed to file a timely appeal from the resolutions the Authority adopted in 2015, which approved the adjustment payments for that calendar year. The Authority also argues that the doctrine of laches bars Ridgefield from challenging its 2015 adjustment payment.

Rule 2:4-1(b) states that appeals must be taken from final decisions or actions of state administrative agencies within forty-five days after "the date of service of the decision or notice of the action taken." When an appeal is not filed within the time prescribed by the rule, the court lacks jurisdiction to decide the matter on the merits. Alberti v. Civil Serv. Comm'n,

41 <u>N.J.</u> 147, 154 (1963); <u>In re Hill</u>, 241 <u>N.J. Super.</u> 367, 372 (App. Div. 1990).

The forty-five-day filing requirement applies to an administrative "agency's quasi-judicial decisions that adjudicate the rights of a particular individual." <u>Nw. Covenant Med. Ctr. v. Fishman</u>, 167 <u>N.J.</u> 123, 135 (2001) (quoting Pressler, <u>Current N.J. Court Rules</u>, comment 2 on <u>R.</u> 2:4-1 (2001)). In determining whether an agency's decision is a quasi-judicial act, the key question is "whether the fact finding involves a certain person or persons whose rights will be directly affected." <u>Id.</u> at 136 (quoting <u>Cunningham v. Dep't of Civil Serv.</u>, 69 <u>N.J.</u> 13, 22 (1975)).

The Authority's 2015 resolutions are quasi-judicial acts because those resolutions represent factual determinations pertaining to the adjustment payments due to the District's constituent municipalities in 2015. Because Ridgefield did not file a timely appeal from the Authority's 2015 resolutions, it may not challenge its adjustment payment, which was authorized by those actions.

In view of our decision, we need not address the Authority's argument that the laches doctrine also precludes Ridgefield from challenging the 2015 adjustment payment.

III.

Kearny, North Arlington, and Ridgefield argue that the Authority erred in calculating their 2016 adjustment payments. These municipalities argue that the Authority erroneously based the payments on the average of each municipality's pre-adjustment payments for 2014, 2015, and 2016, rather than the pre-adjustment payments for 2013, 2014, and 2015, as expressly required by N.J.S.A. 5:10A-59(a).

The scope of our review in an appeal from a final determination of an administrative agency is strictly limited. In re Proposed Quest Acad. Charter Sch. of Montclair Founders Grp., 216 N.J. 370, 385 (2013). An agency's decision will not be reversed unless it is arbitrary, capricious, or unreasonable. Ibid. (citing In re Petition for Rulemaking, N.J.A.C. 10:82-1.2 & 10:85-4.1, 117 N.J. 311, 325 (1989)). Therefore, the court's role in reviewing an agency's decision is limited to three inquiries:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Id. at 385-86 (quoting Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995)).]

Furthermore, we are "not bound by the agency's legal opinions." A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J. Super. 330, 340 (App. Div.) (quoting Levine v. State Dep't of Transp., 338 N.J. Super. 28, 32 (App. Div. 2001)), certif. denied, 200 N.J. 210 (2009). The construction of a statute is "a purely legal issue [that is] subject to de novo review." Ibid. (citing Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)).

Here, the municipalities challenge the Authority's interpretation and application of N.J.S.A. 5:10A-59(a). When the court interprets statutory language, "the goal is to divine and effectuate the Legislature's intent." State v. Shelley, 205 N.J. 320, 323 (2011) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)). We begin our inquiry with the language of the statute, giving the words used therein their ordinary and accepted meaning. Ibid. (citing DiProspero, supra, 183 N.J. at 492). If the statutory language is clear and unambiguous, we must "construe and apply the statute as enacted." In re Closing of Jamesburg High Sch., 83 N.J. 540, 548 (1980).

N.J.S.A. 5:10A-59(a) states that for calendar year 2015, the adjustment payments "shall be the average of the meadowlands pre-adjustment payments for calendar years 2012, 2013, and 2014." The statute also states that for calendar year 2016 and all subsequent

years, "the meadowlands adjustment payment shall be the average of the meadowlands pre-adjustment payments for the prior three calendar years." Ibid.

Thus, N.J.S.A. 5:10A-59(a) plainly and unambiguously requires that the 2016 adjustment payments must be based on the average of the pre-adjustment payments for 2013, 2014, and 2015. It is undisputed that for 2016, the Authority based the adjustment payments upon the average of each municipality's pre-adjustment payments for 2014, 2015, and 2016. Therefore, the Authority did not calculate the payment in accordance with N.J.S.A. 5:10A-59(a).

The Authority maintains, however, that its calculation of the 2016 adjustment payments was reasonable. According to the Authority, it calculated the 2016 payments in accordance with the prior statutory formula, which required the Authority to base the adjustment payments upon the average of the pre-adjustment payments for three calendar years — the current year and the two prior years. See N.J.S.A. 13:17-74(a).[2] The Authority asserts its continued use of the prior statutory formula is entitled to deference. We disagree.

---

[2] N.J.S.A. 5:10A-2(j) provides that in the event there is any conflict between the Act and L. 1968, c. 404 (codified at N.J.S.A. 13:17-1 to -86), the provisions of the Act will control.

The Authority's action is inconsistent with the plain language of N.J.S.A. 5:10A-59(a). Although the Authority may have made its calculations based on the former statutory formula, the Act established a new formula and required that it be applied beginning in 2015. Ibid. The Authority was required to apply the new formula in determining the adjustment payments for 2016. It erred by failing to do so.

The Authority further argues that if the court determines that the 2016 adjustment payments should have been calculated based on the average of the pre-adjustment payments for the three prior calendar years, it should be allowed to address any issues resulting from the erroneous calculation of the 2016 payments, including any underpayments or overpayments, when it calculates the next annual adjustment payments, which now would be in February 2018. We conclude it would be reasonable for the Authority to address these issues when it next calculates the adjustment payments.

Accordingly, the 2016 Resolution is reversed and the matter remanded to the Authority to recalculate the 2016 adjustment payments in accordance with N.J.S.A. 5:10A-59(a). Furthermore, the Authority may address any issues arising from the erroneous calculation of the 2016 adjustment payments when it calculates the payments for 2018.

A-2602-15T4

In addition to arguing that the Authority erred by basing its 2016 adjustment payment on the basis of the average of the pre-adjustment payments for 2014, 2015, and 2016, North Arlington argues that the Authority erred by including $1.1 million that it received in 2012 pursuant to a settlement of a tax appeal.

A constituent municipality's adjustment payment is based in part on the amount that municipality is required to pay into the intermunicipal account. Ibid. The amount payable to the account is based in part upon the increase, if any, in the aggregate true value of taxable real property in the municipality in a comparison year. N.J.S.A. 5:10A-53(f).[3] Any payments in lieu of taxes (PILOT) on real property that the municipality has received are taken into account in determining the increase or decrease in the aggregate true value of taxable real property in the municipality. N.J.S.A. 5:10A-53(e).

The record shows that in April 2011, the New Jersey Meadowlands Commission (Commission) filed a tax appeal challenging North Arlington's real estate tax assessment upon property that the Commission owned in that municipality. The parties eventually

---

[3] The term "comparison year" is defined as "the second calendar year preceding the adjustment year." N.J.S.A. 5:10A-3.

settled the appeal, and the Commission agreed to pay North Arlington $1.1 million.

The settlement agreement required North Arlington to execute a PILOT agreement, which states in part that the $1.1 million would be paid to the municipality as a payment in lieu of taxes "for the period from May 2008 through December 31, 2011[,] and in settlement of all future payments in lieu of taxes on the [p]roperty through December 31, 2030[,] or until such time as use of the [p]roperty changes . . . [.]" The PILOT agreement also states that the parties agreed the payment would be made "in satisfaction of all past and future taxes or payments in lieu of taxes on the [p]roperty for the period through December 31, 2030[,] . . . ." It is undisputed that the $1.1 million was paid to North Arlington in 2012.

On appeal, North Arlington argues that the Authority erroneously included the $1.1 million it received in 2012 in calculating its pre-adjustment payment for 2012. North Arlington contends that if the Authority had not included the $1.1 million payment in determining that pre-adjustment payment, its adjustment payments for 2015 and 2016 would have been significantly greater.

We reject North Arlington's arguments because they are not supported by the plain language of N.J.S.A. 5:10A-53(e). As noted, the statute expressly provides that if a constituent municipality

has received in any comparison year "a payment in lieu of real estate taxes on property located within the district," that payment must be taken into account when determining whether there has been an increase or decrease in the aggregate true value of all taxable real property in the municipality. Ibid.

As noted, the aggregate true value of all taxable property is part of the calculation that ultimately results in the determination of the municipality's adjustment payment. N.J.S.A. 5:10A-53(b)-(f); N.J.S.A. 5:10A-59(a). The 2012 payment was properly considered in determining North Arlington's pre-adjustment payment for 2012, and therefore properly taken into account in calculating the adjustment payments for 2015 an 2016.

North Arlington contends that, at best, the payment it received in 2012 was largely for unpaid real estate taxes and not future tax assessments. It argues that the revenue was not related to any 2012 tax assessments. North Arlington further contends that the Commission labeled the payment a PILOT payment for its "internal purposes." North Arlington therefore maintains that the payment should not have been used in determining its 2012 pre-adjustment payment, or the adjustment payments for 2015 and 2016.

We are not persuaded by these arguments. As noted, the PILOT agreement declares the payment to be a PILOT payment, and North Arlington received the payment in 2012. The Authority's decision

13

to take the 2012 payment into account when calculating North Arlington's 2012 pre-adjustment payment was consistent with the plain language of N.J.S.A. 5:10A-53(e) and supported by sufficient credible evidence in the record.

Reversed and remanded to the Authority for recalculation of the 2016 adjustment payments in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION