131 N.J. Super. 551 (1974)
330 A.2d 636
MAYWOOD EDUCATION ASSOCIATION, INC., MARY ELIZABETH STRICKER AND AMY VAN SADERS, PLAINTIFFS,
v.
MAYWOOD BOARD OF EDUCATION, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided December 6, 1974.
*552 Mr. Theodore Simon for plaintiffs. (Messrs. Goldberg & Simon, attorneys).
Mr. Gerald L. Dorf for defendant.
GELMAN, J.S.C.
Plaintiff Maywood Education Association (association) is the representative of the professional nonsupervisory employees of defendant Maywood Board of Education. The association and the board entered into a collective negotiation agreement for the year ending June 30, 1974. The agreement provides for the payment of retirement compensation to members of the association in accordance with the board's "Policies and Bylaws" adopted on February 20, 1973. The board's policy on retirement compensation reads as follows:
The Maywood Board of Education wishes to acknowledge the tenure and service of its personnel who have served the Maywood School District for twenty (20) years or more.
The Maywood Board of Education will award a longevity increment to the last yearly salary to personnel retiring under the rules and regulations of the New Jersey Teachers Pension and Annuity Fund or the Public Employees Retirement System of New Jersey. The formula for determining the increment shall be five (5) per cent of the unused portion of accumulated sick leave days, as of September 1 of the last school year of employment, times the daily rate of pay established by the existing guide at the time of retirement, and providing twenty (20) years or more of service has been in the Maywood School System.
To qualify for the longevity increment, personnel must submit written notification to the Superintendent of Schools on or before December 1 of their intention to retire the following school year.
*553 Plaintiffs Stricker and Van Saders are members of the association who retired during the term of the agreement. Each had served more than 20 years in the Maywood school system and requested retirement compensation in accordance with the terms of the agreement between the board and the association. Stricker had accumulated 144.5 unused sick leave days, and the retirement compensation due to her under the formula is $536.69. In the case of Van Saders, she had accumulated 187 unused sick leave days and her retirement compensation amounts to $705.87.
The board of education notified the association that it would not pay retirement compensation to Stricker and Van Saders on the ground that the provisions of the agreement requiring such payment were "illegal and unenforceable." The association and the individual plaintiffs instituted this action for a declaration and enforcement of their rights under the agreement.
The board's position is that the provisions of the agreement for the payment of retirement compensation are in conflict with N.J.S.A. 18A:30-1 et seq. which, it is said, prohibit any payment by the board for unused sick leave. The cited sections of the Education Law provide generally for a minimum allowance of ten days sick leave in each school year for employees of a school district (N.J.S.A. 18A:30-2), the accumulation of unused sick leave (N.J.S.A. 18A:30-3), the discretionary recognition of accumulated sick leave when an employee transfers to a different school district (N.J.S.A. 18A:30-3.2), the enforcement of employees' sick leave rights by the Commissioner of Education (N.J.S.A. 18A:30-5), and authorization to boards of education to grant sick leave in excess of the statutory minimum (N.J.S.A. 18A:30-7).
None of the foregoing sections of Title 18A expressly prohibits payment by a board of education for unused sick leave. The statutory scheme spells out the minimum standards for sick leave applicable to all school boards and vests in the individual board discretion to exceed the prescribed *554 minimums. The only statutory limitation on sick leave for school employees is that an employee may not accumulate more than 15 days a year for future use (N.J.S.A. 18A:30-7).
But the board urges that the absence of express authority to pay employees for unused sick leave should be interpreted as an implied prohibition against such payments. The argument is premised upon the fact that with respect to certain state employees the Legislature has expressly sanctioned payment for unused sick leave. See N.J.S.A. 11:14-9. The doctrine of expressio unius est exclusio alterius is invoked to suggest a legislative intent to withhold equivalent treatment for school employees.
The expressio unius doctrine is, as has often been said, an aid in interpreting legislative intent and
* * * it usually serves to describe a result rather than to assist in reaching it. The final question is whether in a given context an express provision with respect to a portion of an area reveals by implication a decision with respect to the remainder. The issue is one of intention. The answer resides in the common sense of the situation. [Reilly v. Ozzard, 33 N.J. 529, 539, (1960)]
In 1973 (L. 1973, c. 130) the Legislature enacted N.J.S.A. 11:14-9 which grants to state employees in the civil service (as well as others) "supplemental compensation" benefits upon their retirement equal to one-half day's pay for each unused sick leave day accumulated during their state employment. While making such payments mandatory for state employees, the Legislature took no action with respect to sick leave pay for any other class of public employees such as school teachers. Its failure to do so, however, cannot be interpreted as evidencing a legislative intent to prohibit payment for unused sick leave to nonstate public employees. Cf. Fred v. Mayor, etc., Old Tappan, 10 N.J. 515, 519-520 (1952); Summer v. Teaneck, 53 N.J. 548, 554-555 (1969). A more reasonable interpretation of its action is that as to other public employees such payments were and continue to be committed to the discretion *555 of the public employers within their existing statutory authority to compensate their employees.
Thus, as to school boards, N.J.S.A. 18A:27-4 confers power upon them to "make rules * * * governing the employment * * * and salaries and time and mode of payment thereof of teaching staff members." This statutory grant of authority is broad enough to encompass payment for unused sick leave either as part of the teacher's annual salary or in the form of additional compensation upon retirement. Cf. Fred v. Mayor, etc., Old Tappan, supra. Whether such payments are to be made rests with the individual board, unless otherwise fixed by a collective negotiation agreement as was the case here. Cf. Teachers Ass'n, Cent. H.S.D. No. 3 v. Board of Ed., etc., 34 A.D.2d 351, 312 N.Y.S.2d 252, 256 (1970).
Finally, the board urges that any payment for unused sick leave would constitute a gift of public moneys to private persons in violation of N.J. Const. (1947), Art. VIII, § III, par. 2.[*]
The argument is premised upon the unstated assumption that that employer receives no consideration if an employee forgoes use of his allotted sick leave, or as it used to be said: A day's pay for a day's work. But "fringe" benefits which now comprise a significant portion of an employee's total compensation do not necessarily fit the old shibboleth.
In Teacher Ass'n, Cent. H.S.D. No. 3 v. Board of Ed., etc., supra, the same argument was made with reference to a teachers' contract which called for payment, upon retirement, of a portion of unused sick leave. The New York Constitution contains a prohibition against gifts of public moneys in *556 language virtually identical to the cited section of our Constitution. In rejecting the board's claim that the contract violated its Constitution, the New York court said:
In short, the courts have recognized that the State and its municipalities in granting pensions, vacations or military leave are not conferring gifts upon their employees, but that essentially the promised rewards are conditions of employment  a form of compensation withheld or deferred until the completion of continued and faithful service * * *.
In our opinion, sick leave as a condition of employment enjoys the same shelter from the constitutional bar. It offers an inducement to competent and efficient workers to enter public service; and the right to accumulate unused sick leave encourages the employee to stay in public service and at the same time deters absenteeism for trifling ailments * * *.
Nor do we see any constitutional barrier to the payment of a sum equivalent to a percentage of accumulated unexercised sick leave when the employee dies in service or severs his relationship. That term of the employment as a benefit to the employee equally serves the end of discouraging unnecessary absences and influencing the public servant to continue in employment  an important consideration for the public employer.
The same issue was presented to the Rhode Island Supreme Court in Providence Teachers Union v. School Committee, 108 R.I. 444, 276 A.2d 762 (1971). The court spelled out in practical terms the consideration received by the employer when sick leave is unused.
We see nothing in the nature of a gratuity with the award in the controversy. Any teachers who have managed to remain in comparatively good health during their 35 years of toil in the educational vineyards of any municipality and might be eligible for some of the benefits described in section 3-22 are not getting something for nothing. This clause serves a useful function in the educational scheme. This provision calling for the payment of accumulated sick leave after 35 years of service acts as an inducement to teachers to remain in the school system and deters absenteeism for trifling ailments. * * * It acts as an aid in seeking to insure that the pupils might have a continuity of teaching techniques in their classrooms throughout the school year. Such a clause might save the school administration much toil and trouble as it seeks to obtain the services of a substitute to cover for the regular teacher who, after deciding his "sniffles" are a portent of the flu, takes advantage of some of his unused *557 sick leave. Upon reflection, it is obvious that any city or town, its school committee and its citizens can benefit by offering a retirement award such as the one contemplated by section 3-22.
The precise issue presented here has not been passed upon by a New Jersey court in any reported opinion. However, decisions have been rendered with respect to other forms of fringe benefits which were asserted to be violative of the gift provisions of our present and past constitutions. In Lynch v. Edgewater, 8 N.J. 279 (1951), our Supreme Court upheld the constitutionality of N.J.S.A. 38:23-1, which provides for a paid leave of absence to any public employee while undergoing field training as a member of a military reserve unit. A similar result was reached with respect to payment of police pensions, Hayes v. Hoboken, 93 N.J.L. 432 (E. & A. 1919); Emanuel v. Sproat, 136 N.J.L. 154 (Sup. Ct. 1947), aff'd 137 N.J.L. 610 (E. & A. 1948), and the payment of salary to municipal employees for periods of illegal dismissal, Jardot v. Rahway, 3 N.J. Misc. 201 (Sup. Ct. 1925). It is fair to say that our courts generally have adopted the view that compensation paid to public employees, whatever the label, is not a gift so long as it is included within the conditions of employment either by statutory direction or contract negotiation.
Judgment will be entered in favor of the plaintiffs in accordance with this opinion.
NOTES
[*] The cited section of the Constitution reads as follows:

`No county, city, borough, town, township or village shall hereafter give any money or property, or loan its money or credit, to or in aid of any individual, association or corporation or become security for, or be directly or indirectly the owner of, any stock or bonds of any association or corporation."