IN THE MATTERS OF THE HACKENSACK BOARD OF EDUCA-
TION, PETITIONER-APPELLANT, AND HACKENSACK
EDUCATION ASSOCIATION, RESPONDENT.

HACKENSACK EDUCATION ASSOCIATION, PETITIONER-RE-
SPONDENT, AND HACKENSACK BOARD OF EDUCATION,
RESPONDENT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued February 22, 1982—Decided March 9, 1982.

Before Judges ALLCORN, FRANCIS and MORTON I. GREENBERG.

*Sidney A. Sayovitz* argued the cause for appellant (*Greenwood & Sayovitz*, attorneys).

*Louis P. Bucceri* argued the cause for respondent Hackensack Education Association (*Bucceri & Pincus*, attorneys).

*Don Horowitz* argued the cause for Public Employment Relations Commission (*Sidney H. Lehmann*, General Counsel, attorney).

The opinion of the court was delivered by

MORTON I. GREENBERG, J. A. D.

The issue raised on this appeal is whether an education association and a board of education which are parties to a collective negotiations agreement entered into pursuant to the New Jersey Employer-Employee Relations Act (hereinafter "act"), *L.*1968, *c.* 303, *N.J.S.A.* 34:13A–5.1 *et seq.*, may include in the agreement a provision for sick leave to be used for other purposes in cases in which the employee is not sick as defined by *N.J.S.A.* 18A:30–1.

The background of this case is not complicated. The Hackensack Board of Education ("Board") and the Hackensack Education Association ("Association") were parties to an agreement executed pursuant to the act, governing the period from July 1, 1980 through June 30, 1982. A teacher employed by the Board wrote the superintendent of schools on September 9, 1980 requesting "a maternity leave." She indicated that she planned to work through November 26, 1980. She stated that she desired first to use her accumulated sick leave and that after those days were exhausted she would like to be allowed the maximum maternity leave which could be granted. She requested advice regarding the number of sick days' credit she had accumulated and how long a maternity leave would be awarded.

The record does not reflect that the teacher received a prompt answer. It does show that on November 24, 1980 the Board adopted a policy regarding leaves of absence. One paragraph of the policy dealt with pregnancy. It provided that:

Pregnancy related disabilities shall be treated like any other disability. For the month preceding and the month following childbirth, the employee is presumed to be disabled and shall be entitled to disability leave benefits. Should disability occur earlier in the pregnancy or continue for more than one month following birth, the employee may receive additional disability leave benefits if she presents a physician's certificate attesting to her extended disability.

The policy also covered child care leaves. It indicated that such leaves without pay may be granted for periods in which the employee is not disabled.

On December 4, 1980 the superintendent of schools wrote the teacher. In harmony with the policy adopted November 24, 1980 she was advised that her accumulated sick leave could be used for 30 days before and for 30 days following the birth of the child. She was further told that if her disability started earlier or continued longer than 30 days before or after the birth of the child she could use her accumulated sick leave for those periods, provided that she presented a physician's statement attesting to the disability and the length of time that it was expected to continue.

On December 15, 1980 the Association, in accordance with the agreement between it and the Board, submitted a written grievance to the principal on behalf of the teacher. The grievance recited that the policy adopted November 24, 1980 had not been negotiated with the Association and significantly altered the contract between the parties. The Association further asserted that under the contract the teacher could use her accumulated sick leave for two years after the birth of a child; that the new policy unilaterally and thus improperly changed a term and condition of employment and that the teacher was being reduced in compensation. Ultimately, after certain intermediate determinations, the Board rejected the grievance. The Board grounded its decision on its reading of the contract that sick leave can be used only if the teacher is actually disabled or sick.

The Association was not satisfied with this decision and consequently requested arbitration, a remedy provided in the contract.

The Board viewed the matter as beyond the scope of negotiations and thus not subject to arbitration. Accordingly, it filed a petition for a scope of negotiations determination with the Public Employment Relations Commission (hereinafter "PERC"). The petition requested that PERC determine whether the matter was within the scope of collective negotiations. The Association subsequently filed a separate petition asking for a scope of negotiations determination in the controversy.

The two cases were consolidated and PERC decided them by a formal decision and order dated June 9, 1981. It held that the dispute concerned a term and condition of employment and, depending upon the agreement between the parties, could be properly arbitrable.[1] It pointed out that it was not determining whether under the contract the issue was arbitrable. Rather it was addressing "the limited question of whether the payment of accumulated sick leave benefits to an employee on a child-rearing leave who is not in fact disabled once the first month of parenthood is past is within the scope of collective negotiations." PERC then indicated that under *State v. State Supervisory Employees Ass'n,* 78 *N.J.* 54 (1978), it was required to determine whether the matter involved a "term and condition" of employment and, if so, whether a specific statute or regulation expressly set the particular term or condition. If the matter did not involve a term or condition of employment, it was not within the scope of collective negotiations and was not arbitrable. Even if it did involve a term and condition of employment, the dispute nevertheless would not be arbitrable if a statute or regulation preempted the matter by specifically setting the term or condition. PERC then held that a contractual clause providing a paid

---

[1]The decision was that of a minority of the commission. There are seven commissioners. See *N.J.S.A.* 34:13A–5.2. Three voted for the decision, one voted against it, two abstained and one is recorded as not present.

child-rearing leave of absence for an employee not disabled constitutes a term and condition of employment. It further held that no statute cited to it preempted a contractual provision allowing an employee to apply accumulated sick leave benefits to a child-rearing leave of absence even if the employee is not disabled.

In reaching its decision that no statute preempted the matter PERC relied heavily on *Maywood Ed. Ass'n v. Maywood Bd. of Ed.*, 131 *N.J.Super.* 551 (Ch.Div.1974). That case considered the effect of the statutory sick leave provisions governing school teachers, as set forth in *N.J.S.A.* 18A:30–1 *et seq.* It held that notwithstanding the provisions for use of sick leave, the Legislature had not precluded payment of compensation to a retiring employee for unused sick leave. PERC reasoned that *Maywood* was applicable since no statute specifically precluded the use of sick leave for child-rearing purposes. PERC could see no distinction between diminishing or exhausting of sick leave benefits for a person still employed and payment for use of such unused benefits to a retiring employee.

The Board has appealed to us from the decision of PERC. It asserts that the use of sick leave by an employee who is not sick or disabled contravenes *N.J.S.A.* 18A:30–1 *et seq.* The Association and PERC assert that the decision is entitled to a presumption of reasonableness and that no statute would preempt a contractual provision allowing use of sick leave for child-rearing purposes.

The test of whether the matter is negotiable was set forth in *State v. State Supervisory Employees Ass'n, supra* :

> Thus, negotiable terms and conditions of employment are those matters which intimately and directly affect the work and welfare of public employees and on which negotiated agreement would not significantly interfere with the exercise of inherent management prerogatives pertaining to the determination of governmental policy.
>
> .    .    .    .    .    .    .    .
>
> Furthermore, we affirm PERC's determination that specific statutes or regulations which expressly set particular terms and conditions of employment, as

defined in *Dunellen*, for public employees may not be contravened by negotiated agreement. For that reason, negotiation over matters so set by statutes or regulations is not permissible. We use the word "set" to refer to statutory or regulatory provisions which speak in the imperative and leave nothing to the discretion of the public employer. All such statutes and regulations which are applicable to the employees who comprise a particular unit are effectively incorporated by reference as terms of any collective agreement covering that unit.

. . . . . . . .

It must be emphasized, however, that the adoption of any specific *statute* or *regulation* setting or controlling a particular term or condition of employment will preempt any inconsistent provision of a negotiated agreement governing that previously unregulated matter. In short, the parties must negotiate upon and are free to agree to proposals governing any terms and conditions of public employment which have not been set, and thus preempted, by specific statutes or regulations.

It is implicit in the foregoing that statutes or regulations concerning terms and conditions of public employment which do not speak in the imperative, but rather permit a public employer to exercise a certain measure of discretion, have only a limited preemptive effect on collective negotiation and agreement. Thus, where a statute or regulation mandates a minimum level of rights or benefits for public employees but does not bar the public employer from choosing to afford them greater protection, proposals by the employees to obtain that greater protection in a negotiated agreement are mandatorily negotiable. A contractual provision affording the employees rights or benefits in excess of that required by statute or regulation is valid and enforceable. However, where a statute or regulation sets a maximum level of rights or benefits for employees on a particular term and condition of employment, no proposal to affect that maximum is negotiable nor would any contractual provision purporting to do so be enforceable. Where a statute sets both a maximum and a minimum level of employee rights or benefits, mandatory negotiation is required concerning any proposal for a level of protection fitting between and including such maximum and minimum. [78 *N.J.* at 67, 80, 81–82].

Because the Board concedes that the issue involves a term and condition of employment not significantly interfering with management prerogatives, we are concerned here only with the preemption question.

*N.J.S.A.* 18A:30–1 defines sick leave as follows:

Sick leave is hereby defined to mean the absence from his or her post of duty, of any person because of personal disability due to illness or injury, or because he or she has been excluded from school by the school district's medical authorities on account of a contagious disease or of being quarantined for such a disease in his or her immediate household.

*N.J.S.A.* 18A:30–2 provides that certain persons holding office, position or employment in a school district employed by a board of education "shall be allowed sick leave with full pay for a minimum of 10 school days in any school year." [2]

*N.J.S.A.* 18A:30–3 provides for accumulation of sick leave as follows:

> If any such person requires in any school year less than the specified number of days of sick leave with pay allowed, all days of such minimum sick leave not utilized that year shall be accumulative to be used for additional sick leave as needed in subsequent years.

*N.J.S.A.* 18A:30–4 provides that when sick leave is claimed, a board of education may require a physician's certificate to be filed with the secretary of the board of education in order to obtain sick leave.

It appears to us from these sections quite clear that sick leave may not be used for child-rearing purposes by a nondisabled teacher. Obviously, the teacher simply would not be sick, as that term is defined in *N.J.S.A.* 18A:30–1. The statute could hardly be more specific. Further, *N.J.S.A.* 18A:30–3 provides for accumulation of unused sick leave "to be used for additional sick leave as needed in subsequent years." Clearly, accumulation of sick leave for use for other purposes would be directly contrary to *N.J.S.A.* 18A:30–3. It would simply not be accumulation for sick leave. If there could be any doubt as to this, it is dispelled by the inclusion of the words "as needed" in *N.J.S.A.* 18A:30–3. Surely the Legislature must have intended the need to be for additional sick leave. Thus, it permitted a board of education to require a physician's certificate to support the claim for sick leave.

We note that a board of education is required to allow a minimum of ten school days of sick leave annually and to permit an accumulation of unused sick leave. *N.J.S.A.* 18A:30- 2, 3.

---

[2] There is no suggestion that the teacher involved in this case is not entitled to this benefit.

We find it hardly conceivable that the Legislature could have compelled a board of education to grant this substantial benefit and then have permitted its use to be diverted to some other claim for absence. Our conclusion in this regard is buttressed by *N.J.S.A.* 18A:30–7 which provides:

> Nothing is this chapter shall affect the right of the board of education to fix either by rule or by individual consideration, the payment of salary in cases of absence not constituting sick leave, or to grant sick leave over and above the minimum sick leave as defined in this chapter or allowing days to accumulate over and above those provided for in section 18A:30–2, except that no person shall be allowed to increase his total accumulation by more than 15 days in any one year.

*N.J.S.A.* 18A:30–7 clearly permits a board to provide for payment of salary for absences not for sick leave. This could include payment of salary during leave for child rearing purposes. But such a paid leave would not be from mandatorily allowed sick leave time. This provision for other paid leave convinces us that the Legislature intended that sick leave be used exactly for the purpose intended. We can hardly conceive how the Legislature could have been more specific in providing for use of sick leave. Use for child-rearing purposes completely frustrates the legislative purpose.

There are additional considerations which lead us to the conclusion that the Legislature intended that sick leave be used only for the specific use provided in *N.J.S.A.* 18A:30–1. There is a public interest in allowing a teacher sick leave with pay and, indeed, in allowing her to accumulate unused sick leave. A sick teacher might, in the absence of available paid-leave time, continue to teach in order to obtain her salary. We think that such a person should not be encouraged to continue to work in those conditions and come into close dealing with school children. Thus, sick leave concerns a term and condition of employment which involves more than simply a benefit to the employee. Further use of sick leave by a teacher not sick will deprive the school and students of her services. Surely there is a strong

public interest in a teacher's performing the service for which she is paid.

*Maywood Ed. Ass'n v. Maywood Bd. of Ed., supra,* 131 *N.J.Super.* 551, is completely distinguishable from this case. There the Chancery Division approved payment to a retiring teacher for unpaid sick leave. Such a result is far different than the use of accumulated statutorily required sick leave to deprive a school of the services of a teacher who is simply not sick or disabled. The contractual provision approved in *Maywood* had the exact opposite impact on the school from the use of sick leave for paid leave for other purposes. The *Maywood* contract encouraged teachers not to use sick leave unless actually needed during sickness or disability. Further, *Maywood* simply did not approve the use of sick leave for other purposes. Rather, it involved payment for unused leave.

We do not doubt that great weight should be given to PERC's determination. *See State v. State Supervisory Employees Ass'n, supra,* 78 *N.J.* at 83–84; *In re State v. Council of N.J. State College Locals,* 153 *N.J.Super.* 91 (App.Div.1977), certif. den. 78 *N.J.* 326 (1978). Yet here it appears that PERC was clearly wrong. In the circumstances we are constrained to reverse its decision.

Finally, we note that the Association in its brief argues that if the use of sick leave with a reduction in the accumulated credit for child-rearing purposes is unlawful, "The practice in question should, at most, be reformed by the Court so as to provide for paid days of child rearing leave up to the number of accumulated sick leave days, but without any reduction in those accumulated days." We can conceive of no jurisdictional or substantive basis on this appeal to reach such an extraordinary result.

The decision and order of June 9, 1981 is reversed. The arbitration demanded by the Association on February 19, 1981 shall not be conducted.