679 A.2d 669

BOARD OF EDUCATION OF THE TOWNSHIP OF NEPTUNE, PETI-
TIONER–APPELLANT, v. NEPTUNE TOWNSHIP EDUCATION
ASSOCIATION, NEPTUNE TOWNSHIP GENERAL SUPERVI-
SORS ASSOCIATION, NEPTUNE TOWNSHIP DEPARTMENT
CHAIRPERSONS ASSOCIATION, AND NEPTUNE TOWNSHIP
PRINCIPALS ASSOCIATION, RESPONDENTS–RESPON-
DENTS.

Superior Court of New Jersey
Appellate Division

Submitted February 21, 1996—Decided July 18, 1996.

1

Before Judges DREIER, A.M. STEIN and KESTIN.

*Hundley, Parry and Hopkins*, attorneys for appellant (*James T. Hundley*, on the letter brief).

*Klausner & Hunter*, attorneys for respondent Neptune Township Education Association (*Stephen B. Hunter*, on the brief).

*Deborah T. Poritz*, Attorney General, attorney for the State Board of Education (*Geraldine Callahan*, Deputy Attorney General, on the statement in lieu of brief).

*Susan E. Galante*, attorney for amicus curiae, New Jersey School Boards Association *(Michael F. Kaelber*, on the brief).

No brief was filed by any other party.

The opinion of the court was delivered by

KESTIN, J.A.D.

In January 1989, the Neptune Board of Education (Board) changed its method of paying over its employees' voluntary salary deductions for credit union and annuity plans. Previously, in a system in place for twenty years, each employee's total monthly contribution was paid over to the credit union or annuity agents on the fifteenth of each month. Beginning January 1989, payments over were made twice monthly, as the funds were deducted from the employees' paychecks on the fifteenth and last day of each month. The effect of the change was to deprive the employees of the additional interest that had formerly accrued between the two paydays.

The Neptune Township Education Association (Association), as the employees' representative, filed an unfair practice charge with the Public Employment Relations Commission (PERC) which, on December 15, 1989, found that the Board had violated *N.J.S.A.* 34:13A–5.4(a)(1) and (5) "when it unilaterally changed a mandatorily negotiable term and condition of employment." The Board was ordered to restore the former system for paying over the deductions, to negotiate the issue in good faith with the Association, and to make whole any employees who could establish losses in interest as a result of the new methods. We affirmed on March 7, 1991, in an unpublished decision; and on June 18, 1991, the Supreme Court denied the Board's petition for certification. 126 *N.J.* 333, 598 *A.*2d 891 (1991). The PERC mandate, which had previously been stayed, was then implemented.

On July 26, 1991, the Board filed a "petition for declaratory judgment" seeking the Commissioner of Education's construal and application of *N.J.S.A.* 18A:66–127 and *N.J. Const.*, art. VIII, § 3, ¶¶ 2 and 3, pursuant to the Commissioner's "jurisdiction to hear and determine . . . all controversies and disputes arising under the school laws," *N.J.S.A.* 18A:6–9. On the Association's motion, the Commissioner dismissed the statutory issue as having been fully addressed in the prior PERC proceeding. The motion to dismiss was denied as to the constitutional issue, however. The Commissioner determined that that issue had not been previously addressed, and ruled that because "the constitutional claim arises from prior Commissioner's decisions having similar fact patterns" it was appropriate for consideration. *N.J.A.C.* 6:24–2.1 provided the procedural framework. In confirming the Commissioner's authority to make declaratory rulings "with respect to the applicability . . . of any statute or regulation enforced or administered by the Commissioner," it is a regulatory effectuation of the powers generally conferred in the Administrative Procedure Act, *N.J.S.A.* 52:14B–8.

The matter was transmitted to the Office of Administrative Law as a contested case. *N.J.S.A.* 52:14B–10(c).

The administrative law judge disposed of the matter on a motion for summary decision. *N.J.A.C.* 1:1–12.5. He explored some decisional law on the public purpose test that governs the application of *N.J. Const.* art. VIII, § 3, ¶¶ 2 and 3, and concluded:

> [T]he Board's current method of crediting payroll deductions of teaching staff members credit union and/or tax shelter accounts on the 15th day of each month prior to a full deduction of earned income for services rendered constitutes an advancement of public money and violates the provision of the New Jersey Constitution, Article VIII, Section III, paragraph 2 and 3.

In reaching that conclusion, the administrative law judge relied on a 1977 decision by the Commissioner involving the Brick Township Board of Education which held:

> [T]he payment of salary beginning on September 3 for the majority or total of pay period in which teachers have not yet rendered a proportionate number of days of teaching service is illegal.

The administrative law judge articulated the following reasons for reaching his decision:

> The Board's crediting method clearly advances money to teaching staff members for services not yet rendered to the Board. The Board is crediting the payroll deduction amount from the last day of the month paycheck prior to the teaching staff member providing services for that pay period. In addition, the crediting method does not serve any public purpose. While the crediting method might result in a municipal savings in administrative costs, it is insufficient to support a determination that the crediting method serves a public purpose, [citing *Riddlestorffer v. Rahway*, 82 *N.J.Super.* 36, 46, 196 *A.2d* 550 (Law Div.1963) ]. The only interests served by the crediting method are the interests of the employees who participate in the payroll deduction program. Therefore, since the Board is crediting the employees' credit union and tax shelter accounts prior to their earning salary for such period, the crediting method violates Article VIII, Section III, paragraphs 2 and 3 of the New Jersey Constitution.

The Commissioner adopted the administrative law judge's initial decision as the final decision in the matter.

In an internal appeal, *N.J.S.A.* 18A:6–27; *N.J.A.C.* 6:2–1.1(a)1, the State Board of Education (State Board) reversed the decision of the Commissioner. The State Board first posited its lack of jurisdiction and that of the Commissioner to decide constitutional claims, but nevertheless "considered the Board's claim in order to ensure an adequate record for determination on appeal." Ad-

dressing the constitutional provisions at issue, the State Board noted:

> Those provisions, which prohibit donations of public funds for private use, were enacted in 1875 in response to widespread abuses in government financing of the railroad industry and were aimed at assuring that "public money should be raised and used only for public purposes." *Roe v. Kervick,* 42 *N.J.* 191, 207, 199 *A.2d* 834 (1964). The provisions "must be applied according to their essence, understood in light of the evil that led to their adoption." *Whelan v. N.J. Power & Light Co.,* 45 *N.J.* 237, 247, 212 *A.2d* 136 (1965).
>
> In this case, respondents' controverted credit union and annuity contributions, forwarded by the Board on the 15th day of each month, represent compensation, in part, for services to be performed by those staff members during the balance of the month. To the extent that such employees have entered into a valid and binding contractual obligation to render services to the district during that period, [footnote omitted] the Board's payments, unlike a mere gift, are supported by valuable legal consideration. *See, e.g., Friedman v. Tappan Development Corp.,* 22 *N.J.* 523, 126 *A.2d* 646 (1956). Contrary to the determination of the Commissioner, we find nothing in the language of the cited provisions of the State Constitution or in the purposes for which such provisions were adopted which would transform compensation to staff members under these circumstances into a prohibited gift or donation of public moneys simply by virtue of its timing. "It is fair to say that our courts generally have adopted the view that compensation paid to public employees, whatever the label, is not a gift so long as it is included within the conditions of employment either by statutory direction or contract negotiation." *Maywood Ed. Assn. Inc. v. Maywood Bd. of Ed.,* 131 *N.J.Super.* 551, 557, 330 *A.2d* 636 (Ch.Div.1974) (retirement payments by district board for unused sick leave did not violate gift provisions of Constitution).
>
> The contention, as cited by the Commissioner in *Brick Township, supra,* that the Board might be required to pursue litigation to recoup such funds in the event of a breach by a staff member of his or her legal obligation does not alter the basic nature of the transaction. Nor does the Board allege that such payments were regarded as or constituted a loan.
>
> Accordingly, we reverse the decision of the Commissioner. While the Board may *prefer* to forward respondents' credit union and annuity contributions twice every month, at the time the deductions are made, we conclude that, to the extent that such staff members are under a legal obligation to render services in the district for the period covered by such contributions, the New Jersey Constitution does not *prohibit* the Board from forwarding their total monthly contributions on the 15th day of the month.
>
> In light of our determination, we also overrule previous Commissioner's decisions, including *Brick Township,* ... to the extent that they can be read to hold that compensation by a district board of education to staff members prior to the rendering of services *necessarily* constitutes a violation of the State Constitution.

From this decision, the Board appeals, disparaging its own prior practice of twenty years' duration. We affirm.

The Association advances two arguments why the merits of this matter should not have been addressed in the light of the prior PERC decision. We reject both.

■ First, the Association argues that consideration of the constitutional issues was barred by principles of *res judicata*, collateral estoppel, and the entire controversy doctrine. Although these doctrines pertain to administrative proceedings by means of "prudent and selective application," *City of Hackensack v. Winner*, 82 *N.J.* 1, 31–32, 410 *A.*2d 1146 (1980), they had no place in the instant matter. The constitutional issue addressed herein was raised in the earlier proceeding before PERC,[1] but was not considered by that agency. By raising the issue before PERC, the Board discharged its entire controversy obligations, *see Perretti v. Ran–Dav's County Kosher, Inc.*, 289 *N.J.Super.* 618, 624–25, 674 *A.*2d 647 (App.Div.1996); and when PERC left the issue unaddressed there was obviously no adjudication to which the issue and claim preclusion arguments advanced by the Association could attach. *See Watkins v. Resorts Intern. Hotel & Casino, Inc.*, 124 *N.J.* 398, 422–23, 591 *A.*2d 592 (1991); *Restatement (Second) of Judgments* §§ 17(3), 27 (1982).

■ The second argument raised by the Association that the Commissioner should not have reached the merits of the constitutional issue bears upon the ninety-day time requirement of *N.J.A.C.* 6:24–1.2(c).[2] The Association argues that the regulation barred the filing of this declaratory ruling proceeding some nineteen months after the PERC decision when, it is contended, the rights of the parties became fixed. This argument is meritless for

---

[1] We were mistaken when we observed in the decision affirming the PERC determination that "[t]he constitutional issue was apparently not raised before PERC."

[2] "The petitioner shall file a petition no later than the 90th day from the date of receipt of the notice of a final order, ruling or other action by the district board of education, individual party, or agency, which is the subject of the requested contested case hearing."

two reasons. First, while the PERC decision was on appeal, and stayed pending appeal, the rights of the parties had neither been fixed nor effected. To the extent the ninety-day time limitation applies at all to cases of this type, it was met by the Board when the petition for a declaratory ruling was filed thirty-eight days after the Supreme Court denied certification. Furthermore, even if the ninety-day requirement had not been met, we have been given no reason why this matter should not be regarded as one suitable for application of the Commissioner's discretionary authority to relax the rules governing the conduct of controversies and disputes. *See N.J.A.C.* 6:24–1.15.

Also as a preliminary matter, we are constrained to note that the State Board overstated the rule when it noted "that neither the Commissioner nor the State Board of Education has jurisdiction to decide constitutional claims." Although the Board relied on accurate readings of *Paterson Redevelopment Agency v. Schulman,* 78 *N.J.* 378, 388, 396 *A.*2d 573 (1979), and *Reed v. Attorney General,* 195 *N.J.Super.* 172, 176, 478 *A.*2d 788 (App.Div. 1984), for this proposition, a later and narrower formulation of the limits on administrative agencies is more authoritative:

> [I]n litigation to resolve purely constitutional claims, ... although an agency may base its decision on constitutional considerations, such legal determinations do not receive even a presumption of correctness on appellate review.
>
> [*Abbott v. Burke,* 100 *N.J.* 269, 298–99, 495 *A.*2d 376 (1985) (citations omitted).]

Where the broader subject matter of a case is within the purview of an administrative agency's authority, it is valuable to have the insights and policy reflections of that agency, even if the only issue to be decided is one of constitutional dimension, in respect of which the agency is seen to have no particular expertise or authoritative decisional role. In such matters, it is appropriate that a case proceed as an agency adjudication, whether pursuant to *N.J.S.A.* 52:14B–8 or another procedural source, subject, of course, to appellate review without the presumption of correctness that would attend the resolution of less weighty questions.

The Article VIII, § 3 New Jersey Constitution provisions at issue are, paragraph 2:

> No county, city, borough, town, township or village shall hereafter give any money or property, or loan its money or credit, to or in aid of any individual association or corporation, or become security for, or be directly or indirectly the owner of, any stock or bonds of any association or corporation.

and paragraph 3:

> No donation of land or appropriation of money shall be made by the State or any county or municipal corporation to or for the use of any society, association or corporation whatever.

 We are in substantial agreement with the analysis employed by the State Board and its reliance on *Roe v. Kervick*, 42 *N.J.* 191, 199 *A.*2d 834 (1964), the seminal case on the meaning and application of the public purpose doctrine. The State Board's decision is a succinct and straightforward application of the constitutional values and policies that govern. Little needs to be added.

There was no gift of public funds here. The payment over of employee voluntary deductions fifteen or sixteen days before the related paychecks were issued was merely a detail in the administration of the employees' compensation package. To the extent a specific public purpose needs to be identified apart from the Board's broad interests as a public employer, it was well, and properly within the Board's concern, that employee thrift be encouraged and rewarded so that future financial security might be promoted. Success along this line would be of a piece with the public purpose perceptions that validate employer contributions to employee pensions, perhaps precluding a need to increase such contributions. The considerations that underlie the earlier PERC decision are illuminating in this regard. The entire issue of employee compensation, whether by way of salary, customary fringe benefits, or other reasonable modes of payment related to the rendition of employee services or the administration of labor contracts, is generally within the power of the public employer to effect; and the Legislature has chosen to commit such issues to the process of collective negotiations unless specifically precluded by statute. *State v. State Supervisory Employees Ass'n*, 78 *N.J.* 54, 79–81, 393 *A.*2d 233 (1978).

■ We note that the State Board has chosen to abrogate, for administrative policy reasons as well as constitutional considerations, the Commissioner's holdings in prior cases that the timing of salary payments to school district employees is subject to strict control. We take this to mean that, in the State Board's view, for example, there is no existing bar, in law or administrative policy, against a school board making periodic advance payments for health coverage on behalf of its employees as a fringe benefit of employment. In our view, there is no constitutional rule that prevents a board of education from making reasonable contractual commitments controlling the details of employee compensation and how it is paid. "[T]he prohibition against lending of credit or money does not mean that the State and its political subdivisions cannot buy and pay for what they need to achieve public purposes." *Roe v. Kervick, supra,* 42 *N.J.* at 217, 199 *A.*2d 834. "[A]n expenditure of public money is not to be condemned as unconstitutional because an incidental private benefit accompanies pursuit of the public purpose. Where such a double aspect is an accompaniment of a statute, courts seek the objective which is primary, and, for constitutional test, classify the purpose as public or private accordingly." *Id.* at 223, 199 *A.*2d 834.

■ Manifestly, since public funds may validly be used to achieve a variety of public purposes by a variety of means, there can be no constitutional bar against the reasonable use of public funds to provide benefits of public employment, whether direct or indirect, substantial or incidental. The test for public purpose is not who receives the funds or even when, but rather the extent to which their expenditure is connected with valid governmental functions or policies.

Affirmed.