**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1492-22

ROBERT STRAUSS,

 Petitioner-Appellant,

v.

BOARD OF EDUCATION OF THE
BOROUGH OF METUCHEN,
MIDDLESEX COUNTY,

 Respondent-Respondent.

_____

Argued January 22, 2024 – Decided February 2, 2024

Before Judges Sabatino and Chase.

On appeal from the New Jersey Commissioner of Education, Docket No. 246-12/20.

Richard A. Friedman argued the cause for appellant (Zazzalli, PC, attorneys; Richard A. Friedman, of counsel and on the briefs; Sheila Murugan, on the briefs).

Eric Labes Harrison argued the cause for respondent Board of Education of Metuchen, Middlesex County (Methfessel & Werbel, attorneys; Eric Labes Harrison, of counsel and on the brief; Kajal J. Patel, on the brief).

Colin G. Klika, Deputy Attorney General, argued the cause for respondent New Jersey Commissioner of Education (Matthew J. Platkin, Attorney General, attorney; Colin G. Klika, on the statement in lieu of brief).

PER CURIAM

Petitioner Robert Strauss ("Strauss") appeals the Commissioner of Education's ("Commissioner") December 14, 2022 final decision in favor of the Board of Education of the Borough of Metuchen ("BOE") which denied his sick leave request pursuant to N.J.S.A. 18A:30-1. We affirm.

I.

Strauss is a tenured teacher employed by the BOE where he serves students from pre-kindergarten through high school. Following the lifting of COVID-19 lockdown measures in September 2020, all teachers in the district resumed conducting in-person teaching.

Strauss was previously diagnosed and treated for auto-immune conditions. In November 2020, Strauss received a letter from Shalini Sirisena, MS, PA-C, and William Rossy, MD, explaining the potentially life-threatening implications of Strauss' illnesses if he were to contract the COVID-19 virus. Dr. Rossy concluded it was essential that the BOE grant Strauss use of sick leave to avoid significant and severe risks to his health from working in-person.

A-1492-22

Strauss subsequently applied for a remote work accommodation under the Americans with Disabilities Act, 42 U.S.C. § 12101-12117, a request the BOE denied. Strauss then applied for, and was granted, childcare leave pursuant to the Families First and Coronavirus Response Act, Pub. L. 116-127 ("FFCRPA"). After exhausting the total leave afforded under FFCRPA, Strauss requested, and was denied, leave with use of accrued sick days. From December through the remainder of the 2020-21 school year, Strauss remained on unpaid leave of absence due to the lack of available remote teaching opportunities.

Strauss filed a petition of appeal with the Commissioner challenging the BOE's determination that he was not personally disabled and entitled to sick leave with pay. Strauss maintained his underlying medical conditions purportedly placed him at high risk of contracting the COVID-19 virus and developing serious complications, severe illness, or death. The Commissioner transferred the matter to the Office of Administrative Law ("OAL"). A hearing on the matter was scheduled for May 25, 2022, but the parties agreed to proceed by briefing in lieu of a hearing. The parties submitted a joint stipulation of facts and exhibits in support of their respective submissions. Strauss included a certification by Dr. Rossy, repeating his prior concerns if Strauss continued to work in-person. The contents of this exhibit were undisputed.

The OAL issued its initial decision denying the petition holding Strauss did not qualify for statutory sick leave because he was not personally disabled. On December 14, 2022, the Commissioner issued her final decision, adopting and affirming the OAL.

This appeal follows. Strauss asserts that due to the health risks posed by his health concerns if he were to contract COVID-19, he is personally disabled and thus entitled to use sick leave.

II.

Appellate courts review questions of law de novo and are therefore not bound by the lower courts or agency's legal determination. Kean Fed'n of Tchrs. v. Morell, 233 N.J. 566, 583 (2018) (citing Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 386 (2016)). This court does not owe the Commissioner's decision any deference on questions law. "In an appeal from a final agency decision, an appellate court is in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Melnyk v. Bd. of Educ. of the Delsea Reg'l High Sch. Dist., 241 N.J. 31, 40 (2020) (quoting Ardan v. Bd. of Review, 231 N.J. 589, 604 (2018)). "[W]e review the [statute] on equal footing with the Commissioner." Ibid. We will therefore review an agency's interpretation of a

statute de novo. <u>Thompson v. Bd. of Trs., Teachers' Pension and Annuity Fund</u>, 449 N.J. Super. 478, 484 (App. Div. 2017).

We are nonetheless mindful of an "administrative agency's day-to-day role in interpreting statutes 'within its implementing and enforcing responsibility.'" <u>In re State Bd. of Educ.'s Denial of Petition to Adopt</u>, 422 N.J. Super 521, 531 (App. Div. 2011) (citing <u>Wnuck v. N.J. Div. of Motor Vehicles</u>, 337 N.J. Super. 52, 56 (App. Div. 2001) (internal citation and quotations omitted). "When discerning the meaning of a statute, our role 'is to discern and effectuate the intent of the Legislature.'" <u>Saccone v. Bd. of Trs. of Police and Firemen's Ret. Sys.</u>, 219 N.J. 369, 380 (2014) (quoting <u>Murray v. Plainfield Rescue Squad</u>, 210 N.J. 581, 592 (2012)).

"Toward that end, the plain language of the statute provides the starting point for the analysis." <u>Ibid.</u> (citing <u>In re Kollman</u>, 210 N.J. 557, 568 (2012)). "The language of the statute must be construed in accordance with its ordinary and common-sense meaning." <u>Ibid.</u> (citing <u>State ex rel. K.O.</u>, 217 N.J. 83, 94 (2014)). We must not "rewrite a plainly written statute or . . . presume that the Legislature meant something other than what it conveyed in its clearly expressed language." <u>Murray</u>, 210 N.J. at 592. <u>See also</u> <u>State v. Gandhi</u>, 201 N.J. 161, 176 (2010) (holding that "the best indicator of that intent is the plain language

5

chosen by the Legislature.").  "[W]hen the language of the statute is clear on its face, 'the sole function of the courts is to enforce it according to its terms.'" Cashin v. Bello, 223 N.J. 328, 335 (2015) (quoting Hubbard v. Reed, 168 N.J. 387, 392 (2001)).

Therefore, the Commissioner's decision should be reversed if it is "plainly unreasonable and violates express or implied legislative direction[,]" that is, if it "gives 'a statute any greater effect than is permitted by the statutory language[,] . . . alter[s] the terms of a legislative enactment[,] . . . frustrate[s] the policy embodied in the statute . . . [or] is plainly at odds with the statute." Patel v. N.J. Motor Vehicle Comm'n, 200 N.J. 413, 420 (2009) (quoting T.H. v. Div. of Developmental Disabilities, 189 N.J. 478, 491 (2007)).  To prevail before this Court, it must be demonstrated that: (1) the Commissioner failed to follow the law; (2) the Commissioner's decision was not supported by substantial evidence in the record; and (3) in applying the law to the facts, the Commissioner plainly erred, as the Final Decision could not have reasonably been made on a showing of the relevant factors.  City of Jersey City v. Jersey City Police Officers Benevolent Ass'n, 154 N.J. 555, 567 (1998) (citing In re Musick, 143 N.J. 206, 216 (1996)).

A-1492-22

At issue on appeal is whether sick leave pursuant to N.J.S.A. 18A:30-1 may be utilized when an employee is at substantial risk of a more severe illness because of his pre-existing illnesses if he were to contract COVID-19. Strauss argues the Commissioner's finding was unfounded because his medical documentation clearly established his inability to appear or perform his teaching duties in-person. Because Dr. Rossy determined the dangers Strauss would face in such a scenario, Strauss asserts Dr. Rossy's certification sufficiently established his eligibility for use of sick time under the statute. Strauss asserts requiring him to work in-person would place his health and safety "at an unacceptable and unnecessary risk."

N.J.S.A. 18A:30-1 defines sick leave as the absence from work if: "(1) the employee is personally ill or injured," or "(8) the employee has been exposed to a contagious disease or is quarantined for the disease in the employee's immediate household." The BOE's Policy on Attendance mirrors the statute and defines sick leave as "absence from work because of a personal disability due to injury or illness."

"The term 'personal' is not defined in Title 18A, but its generally accepted meaning is 'personal' as '[o]f or affecting a person,' as in a 'personal injury.'"

Angus v. Bd. of Educ. of Metuchen, 475 N.J. Super. 362 371 (quoting Personal, Black's Law Dictionary (11th ed. 2019)); Personal, Merriam-Webster, https://www.merriam-webster.com/dictionary/personal (defining "personal" as "of, or relating to, or affecting a particular person")). Accordingly, one must be personally disabled due to illness or injury to utilize sick leave.

The BOE's policy and the statute's language signify that employees are entitled to sick leave where they have developed a personal disability preventing them from performing their duties to their fullest abilities. Here, Strauss does not prove that he is currently personally disabled. While he attempts to support his claim for sick leave through a treating physician's certification, this evidence only demonstrates Strauss is at a higher risk than others because of his underlying illnesses. The risk of becoming more affected by COVID-19 is not the same as being disabled, and if it were, the statute would include language entitling those at a high risk of such result to sick leave. While Strauss suffers from some very serious illnesses, those illnesses do not render him personally disabled and unable to perform his teaching duties in person.

Strauss further argues the Commissioner erroneously relied on two cases, Castellano v. Linden Bd. of Educ., 79 N.J. 407 (1979), and In re Hackensack Bd. of Educ., 184 N.J. Super. 311 (App. Div. 1982). Strauss contends those

cases do not demonstrate a teacher would not be considered disabled due to risks posed from the COVID-19 pandemic and thus should not have been applied to his claim.

In Castellano, the Court found a woman giving birth to a child is considered physically disabled and unable to attend to her teaching duties, and thus should be eligible for sick leave. 79 N.J. at 412. In Hackensack, the question arose as to whether a teacher could use sick time for childcare. 184 N.J. Super. at 311-13. We determined sick leave deprives a teacher's school and its students of services and should not be granted to a person who is not sick or disabled. Id. at 319.

Although Strauss' circumstances are distinguishable from the issues presented in Castellano and Hackensack, the proposition in those cases—that sick time is only appropriate for actual sickness, rather than the risk of sickness—remains true. While the plaintiff in Castellano sufficiently established the inability to attend to or carry out her teaching duties due to their circumstances, and the plaintiff in Hackensack did not, because Strauss fails to satisfy the threshold requirement of a demonstrated inability to carry out his teaching duties, there is no need to consider the severity of his conditions.

A-1492-22

As demonstrated by the BOE, Strauss suffered from these illnesses prior to the pandemic, yet he was still able to attend work and carry out his teaching duties in-person. Strauss still suffers from these illnesses now with the added risk of potentially worse health conditions if he were to contract COVID-19. While a worsening health condition is a risk that should not go unappreciated, such risks are not equivalent to experiencing actual worsened health conditions or being truly unable to work. The plaintiff in Castellano was entitled to sick leave due to her demonstrated inability to carry out those duties, not an increased risk that an inability may develop in the future. Strauss, like the plaintiff in Hackensack, is unable to demonstrate an inability to perform his teaching duties and was denied sick leave accordingly.

Strauss posits the Commissioner basing its decision on the public's interest in not depriving students of educational services is moot. Strauss maintains mechanisms are in place to grant teachers sick leave without depriving students of services, and the onset of the pandemic is the type of situation contemplated by the Legislature that would warrant granting such protective measures to a requesting teacher.

Finally, Strauss argues granting sick leave for exposure to a virus is not a new concept, especially when COVID-19 vaccinations had yet to be widely

A-1492-22

available to the public at the time he filed his claim. In doing so, Strauss contends the statute, read in its entirety and given its full meaning, would allow him to reasonably utilize accrued sick leave. Strauss argues the circumstances surrounding the onset of the COVID-19 pandemic and all its uncertainties make it a novel illness—one which should justify more consideration to those who suffer from illnesses that place them at a high risk of serious medical complications if they contract the virus.

Granting sick leave to employees, especially teachers, implicates strong public interest. "There is a public interest in allowing a teacher sick leave with pay and, indeed, in allowing [them] to accumulate unused sick leave." Hackensack, 184 N.J. Super. at 318. However, granting sick leave to a teacher who fails to demonstrate personal disability due to illness or injury "will deprive the school and students of [their] services," an issue for which there is "[s]urely . . . a strong public interest." Ibid.

We certainly understand the predicament for Strauss and others who have grown increasingly concerned about their health risks with an ever-changing virus that seems to bring with it new symptoms and risks as it mutates. But granting teachers sick leave when they are unable to meet the long-established statutory requirement that would warrant such leave would not only deprive

students of that teacher's services but would create the risk of granting sick leave under an erroneous interpretation of the statute. We also must be mindful of the statewide policy prerogatives of the Commissioner and the Department's expertise. We should be cautious not to apply incorrect readings beyond what the statute plainly allows, and we should maintain such caution for the reasons attributed to both the applicable legal principles and the strong public interest.

To the extent we have not addressed an argument raised by plaintiff, it is because it lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(D) and (E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION