**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4553-15T4

COUNTY OF CUMBERLAND,

    Plaintiff-Respondent,

v.

ATLANTIC CITY ELECTRIC COMPANY,
PEPCO HOLDINGS, INC. d/b/a
ATLANTIC ELECTRIC, INC.,

    Defendants/Third-Party
    Plaintiffs-Appellants,

v.

DUALL BUILDING RESTORATION,
INC.,

    Third-Party Defendant-
    Respondent.

_____

        Submitted June 6, 2017 — Decided June 28, 2017

        Before Judges Yannotti and Sapp-Peterson.

        On appeal from Superior Court of New Jersey,
        Chancery Division, Atlantic County, Docket No.
        C-70-15.

        Wendy Stark, General Counsel of Pepco
        Holdings, Inc., attorney for appellants (Renee
        E. Suglia, Assistant General Counsel, on the
        brief).

Theodore E. Baker, Cumberland County Counsel, attorney for respondent County of Cumberland (Mr. Baker, on the brief).

Del Duca Lewis, LLC, attorneys for respondent Duall Building Restoration, Inc. (Joshua L. Broderson, on the brief).

Gluck Walrath, LLP, attorneys for amicus curiae County of Monmouth (Andrew Bayer, of counsel and on the brief; David A. Clark and Michael C. Bachmann, on the brief).

Chasan Leyner & Lamparello, attorneys for amicus curiae County of Hudson, join in the brief of amicus curiae County of Monmouth.

PER CURIAM

Atlantic City Electric Company (ACE) and Pepco Holdings, Inc. (Pepco) appeal from an order entered by the Chancery Division, Atlantic County, on May 10, 2016, which determined that ACE was responsible for the cost of relocating high-voltage power lines and a guy-wire in connection with construction work on the façade of the Cumberland County (County) courthouse.[1] We reverse and remand the matter to the trial court for further proceedings.

The material facts are not in dispute. ACE is a public utility, organized and existing under New Jersey law. ACE owns and maintains high-voltage power lines on County Road 650, also known as Fayette Street, in the City of Bridgeton, Cumberland County.

---

[1] Pepco is the owner of ACE. Except as otherwise indicated, ACE refers to ACE and Pepco, collectively.

A-4553-15T4

In 2015, the County entered into a contract with Duall Building Restoration, Inc. to perform construction work on the façade of the courthouse facing Fayette Street. Before beginning the work, the County and Duall contacted ACE and requested that ACE de-energize or move the high-voltage power lines located on Fayette Street adjacent to the worksite.

The parties agree that a regulation of the Occupational Safety and Health Administration (OSHA), 29 C.F.R. 1926.416, and the New Jersey High Voltage Proximity Act (NJHVPA), N.J.S.A. 34:6-47.1 to -47.9, preclude contractors from allowing their workers to perform work within certain distances of high-voltage power lines. ACE agreed to de-energize and move the lines or just de-energize the lines, provided the County agreed to pay the cost of doing so.

On September 3, 2015, the County filed a complaint in the Law Division, Cumberland County, against ACE. The County sought an order requiring ACE to relocate the power lines on Fayette Street at its own cost and expense. It also sought an injunction barring ACE from demanding payment from the County before beginning work to relocate the power lines.

On September 4, 2015, the Law Division judge entered an order compelling ACE to show cause as to why it should not be required to move the power lines at its own expense and cost. On September 15, 2015, the judge ordered ACE to relocate the power lines along

Fayette Street so that the County could begin work on the courthouse façade. The order also required the County to make funds available for the estimated cost of relocating the power lines in the event that the court finds that the County is responsible to pay that cost. Jurisdiction over the matter was then transferred to the Chancery Division, Atlantic County.

On November 17, 2015, ACE filed an answer, counterclaim, and third-party claim against "John Doe" contractors. ACE asserted that it de-energized and relocated the power lines on September 24, 2015, at a cost of $31,688.88. Later, ACE moved another guy-wire from the vicinity in which the construction work was being performed, at a cost of $6171.88. ACE denied that it was responsible for these costs. ACE claimed that either the County or the "John Doe" contractors were responsible.

Thereafter, ACE amended its third-party claim to name Duall as a third-party defendant. Duall filed an answer to the third-party complaint, denying liability. It also asserted a cross-claim against the County. Duall claimed that if found to be liable, it was entitled to indemnification by the County.

On April 29, 2016, the Chancery Division judge heard oral argument on the issue of which party is responsible for the cost of relocating the power lines. ACE argued that the County and Duall are responsible for the cost of moving the power lines.

4                                                    A-4553-15T4

ACE's counsel noted that the County had provided ACE an easement, which allowed ACE to provide electric service to the courthouse, which is in close proximity to the street. ACE has utility poles for its power lines in a narrow, grassy strip within the adjacent public right-of-way. ACE acknowledged that the power lines are within the easement area and the public right-of-way. The power lines provide electricity not just to the courthouse, but also to ACE's other customers in the area.

ACE further argued that the County and Duall are responsible for the expense of removing the guy-wire that ACE installed to keep the utility poles from falling over when it moved the power lines. ACE asserted that initially, ACE and the County had agreed upon the work that was required to relocate the power lines, and ACE performed that work.

Several days later, the County called ACE back to remove the guy-wire because the wire was impeding the movement of machinery and equipment around the work site. ACE argued that the County and Duall are responsible for this additional cost because they failed to identify the need to remove the guy-wire before ACE moved the power lines.

The judge placed his decision on the record. He concluded that ACE was responsible for the cost of moving the high-voltage power lines and the guy-wire. The judge found that under the common

law, a public utility is responsible for the cost of relocating its facilities in order to accommodate a public project. The judge noted that under the NJHVPA, workers may not perform construction work within six feet of a high-voltage power line.

The judge concluded, however, that when the public welfare requires relocation of power lines, the common law relieves the property owners of financial responsibility for the relocation. The judge stated that this result was "a quid pro quo" for the public utility's use of the public right-of-way.

The judge entered an order dated May 10, 2016, which stated that ACE is responsible for the cost of relocating the high-voltage power lines and any related costs. The order also dismissed ACE's third-party claim against Duall.

ACE's appeal followed. We thereafter granted the County of Monmouth and the County of Hudson leave to participate in the appeal as amici curiae.

On appeal, ACE argues that the NJHVPA applies in this matter and requires Duall, the County's contractor, to bear the expense of relocating the power lines and guy-wire. The NJHVPA provides in pertinent part that

> [n]o employer or supervising agent of an employer shall require or permit an employee to participate in the operation, erection, transportation, handling, or storage of any tools, machinery, equipment, supplies,

materials, or apparatus . . . to come within [six] feet of a high-voltage line[,] or to participate in any activity which would cause the employee to come within [six] feet of a high-voltage line[,] unless precautionary action has been taken to protect against the danger from contact with such high-voltage line, either by de-energizing such high-voltage line and grounding it where necessary, or other effective methods or devices which have been approved in advance . . . .

[N.J.S.A. 34:6-47.2.]

In addition, N.J.S.A. 34:6-47.5 states that the employer, contractor, or other responsible person who is required to take "precautionary action" under N.J.S.A. 34:6-47.2, must promptly notify "the owner or person in charge of the high-voltage line of the intended activity." The statute also states that the employer, contractor, or other responsible person must pay the cost of "the precautionary action required . . . before proceeding with such activity." N.J.S.A. 34:6-47.5.

Here, it is undisputed that the façade of the County's courthouse is in close proximity to ACE's high-voltage power lines. Under N.J.S.A. 34:6-47.2, Duall could not permit its employees to perform any activity that would cause them to come within six feet of the power lines unless "precautionary action" is taken to protect the workers from coming within contact with the lines. The parties agree that the lines had to be de-energized and then moved

to protect the workers and to provide uninterrupted power to the courthouse and ACE's other customers in the area.

Furthermore, N.J.S.A. 34:6-47.5 expressly provides that the employer, contractor, or other persons required to take "precautionary action" must bear the cost of such "precautionary action." In this matter, Duall was the party responsible for taking the "precautionary action," and N.J.S.A. 34:6-47.5 clearly and unambiguously requires that it bear the expense of doing so.

The trial court found, however, that ACE had a duty under the common law to relocate the high-voltage power lines in the public right-of-way because the relocation of those lines was necessary so that work could proceed on the courthouse project. In support of that conclusion, the trial court relied upon Port of New York Authority v. Hackensack Water Co., 41 N.J. 90 (1963), and Pine Belt Chevrolet v. Jersey Central Power & Light Co., 132 N.J. 564 (1993). Those cases do not apply here.

In Port of New York Authority, the Court addressed the question of whether a public utility is responsible for the cost of relocating its facilities in the public right-of-way in order to accommodate a public project. In that case, the Port Authority undertook improvements to certain of its properties, and the work required relocation of facilities of utility companies that were

located in the public streets. Port of N.Y. Auth., supra, 41 N.J. at 93.

The Court held that the utilities are responsible for the relocation costs because the utilities have been permitted to locate their facilities in the public right-of-way "as a use ancillary to the principal and primary use of the way by the public." Id. at 96. The Court stated that a utility's interest in the public way is subordinate to that of the public; therefore "the utility runs the risk that the public welfare may require changes in the road which will call for relocation of its facilities." Id. at 96-97.

The Court added that it was not significant that, in addition to its franchise rights, the utility may have the consent of the owner of the "underlying fee" to use of the property. Id. at 99. The Court stated that "when the public claims its paramount right in the public easement, the utility cannot resist that right on the basis of the subordinate grant from the abutting owner." Ibid.

The Court addressed a similar issue in Pine Belt Chevrolet. There, certain property owners sought permits from the New Jersey Department of Transportation (NJDOT) for access to a State highway. Pine Belt Chevrolet, supra, 132 N.J. at 567. As a condition of issuing the permits, the NJDOT required that the curb lines

abutting the highway be set back. Ibid. The utility poles had to be relocated behind the new curb line. Ibid.

The property owners maintained that the utility was responsible for the cost of relocating the utility poles. Ibid. The utility argued, however, that the NJDOT was responsible for the costs, under N.J.S.A. 27:7-44.9. Id. at 568. The statute requires the Commissioner of Transportation to include the cost of relocating public utility facilities in the cost of any "highway project," a term defined as projects "administered and contracted for by the Commissioner." Ibid. (quoting N.J.S.A. 27:7-44.9).

The Court noted that before enactment of the statute, "the common law assigned utility-relocation costs to the utility company when the project necessitating the relocation benefitted the public." Id. at 572. The Court observed that the statute was intended to shift the costs of such utility relocations "away from the utility company." Id. at 573-74. The Court held that the subject costs were not covered by the statute because costs were paid by the property owners and the statute only applies when the NJDOT "pays for all or part . . . of the underlying highway project." Id. at 582.

We agree with ACE that the common law principle discussed in Port of New York Authority and Pine Belt Chevrolet is limited to road-widening projects. Both cases dealt with the need to move

utility facilities, which were located within the public right-of-way, in order to accommodate road-widening and other construction projects in the public streets. Neither Port of New York Authority nor Pine Belt Chevrolet dealt with the need to move high-voltage power lines in order to protect workers from coming in contact with them. Moreover, the opinions in Port of New York Authority and Pine Belt Chevrolet do not suggest that a utility has the duty to move its power lines in order to facilitate work on any public building.

The County argues that the NJHVPA does not apply in this case. The County asserts that the key issue presented here is whether ACE's facilities are in the public right-of-way and whether or not there is a public project for a public benefit that requires relocation of the facilities. The County contends that the need to provide safety for the contractor's employees is merely a "collateral benefit" resulting from the removal of the power lines.

We disagree with the County's argument. Here, the record shows that ACE's high-voltage power lines had to be moved in order to protect the workers from coming into contact with the lines while they are working on the façade of the courthouse. The lines are within the public right-of-way, but there was no work on the roadway that required relocation of the lines.

A-4553-15T4

Moreover, the need to protect the workers on the courthouse project was not a "collateral benefit." It was the reason the high-voltage power lines had to be moved. Furthermore, the need to move the guy-wire was directly related to the relocation of the power lines. The guy-wire had been installed to keep the utility poles in place when the power lines were relocated, but the line had to be taken down because it was impeding access to the work site by forklifts and other machinery.

The County further argues that if the cost of moving the power lines and the guy-wire is placed on its contractor, Duall and other contractors will pass these costs to the County and its taxpayers through change orders or higher bid prices. The Counties of Monmouth and Hudson also raise this concern. They argue that the taxpayers should not be required to bear the cost of relocating power lines for public interest projects.

We are, however, required to interpret a statute in accordance with the Legislature's intent, and "generally, the best indicator of that intent is the statutory language." DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citing Frugis v. Bracigliano, 177 N.J. 250, 280 (2003)). We must give "the statutory words their ordinary meaning and significance." Ibid. (citing Lane v. Holderman, 23 N.J. 304, 313 (1957)).

As we have explained, NJHVPA expressly requires a contractor to take "precautionary action" to protect its workers from coming into contact with high-voltage power lines, and the contractor has the responsibility to bear the cost and expense of such action. The NJHVPA provides no exemption when the work is being performed upon a public building, nor does it relieve the contractor of the responsibility to pay for the "precautionary action" required if the high-voltage power lines are within the public right-of-way.

We cannot "rewrite a plainly-written" statute or presume that "the Legislature intended something other than that expressed by way of the plain language." Ibid. (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)). We must "construe and apply the statute as enacted." Ibid. (quoting In re Closing of Jamesburg High School, 83 N.J. 540, 548 (1980)). We therefore conclude that the NJHVPA applies in this instance and requires the County's contractor, Duall, to bear the cost and expense to de-energize and move the power lines and to remove the guy-wire.

As we noted previously, Duall filed a cross-claim against the County, alleging that if it is found liable, the County should indemnify it for the costs involved. Because the trial court found that ACE was responsible for the costs, it did not address this issue. We therefore remand the matter to the trial court to resolve Duall's claim against the County.

Reversed and remanded to the trial court for further proceedings in conformity with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4553-15T4