**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1153-24

BOARD OF EDUCATION OF THE
WARREN HILLS REGIONAL
SCHOOL DISTRICT,
WARREN COUNTY,

      Petitioner-Respondent,

v.

BOARD OF EDUCATION OF THE
TOWN OF HACKETTSTOWN,
WARREN COUNTY,

      Respondent-Appellant,

and

NEW JERSEY DEPARTMENT OF
EDUCATION,

      Respondent-Respondent.

_____

      Submitted April 22, 2026 – Decided June 10, 2026

      Before Judges Berdote Byrne and Jablonski.

      On appeal from the New Jersey Commissioner of Education, Docket No. 056-4/21.

Gorman, D'Anella, & Morlok, LLC, attorneys for appellant (William C. Morlok, on the briefs).

Schenck, Price, Smith & King, LLP, attorneys for respondent Warren Hills Regional School District Board of Education (Marc H. Zitomer, on the brief).

Jennifer Davenport, Attorney General, attorney for respondent Commissioner of Education (Sadia Ahsanuddin, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Defendant the Board of Education of the Town of Hackettstown ("Hackettstown") appeals from a final agency decision by the New Jersey Commissioner of Education ("Commissioner") who concluded Hackettstown should bear the financial responsibility for student E.N.'s educational costs as, opposed to an alternate district, which was initially deemed financially responsible. The limited issue presented is whether the alternate district's petition to the Commissioner was filed within the timeframe provided under N.J.A.C. 6A:3-1.3(i). The Commissioner decided the challenge was timely, Hackettstown was E.N.'s district of residence, and that Hackettstown was responsible for E.N.'s education costs. Applying our deferential standard of review, we affirm.

2

A-1153-24

I.

The New Jersey Department of Children and Families ("DCF") placed E.N. at the Bancroft School ("Bancroft"), a private residential school for students with special needs. When she enrolled, E.N. was living with her mother, S.A., in Newark. In September 2016, S.A.'s mother and S.A.'s sister leased an apartment in Mansfield Village that was located in the Warren Hills School District ("Warren Hills"). The residency application and the lease listed S.A. and A.N. (E.N.'s sister) as additional occupants and immediate family members. The initial lease began on December 1, 2016, and ended on November 30, 2017. S.A.'s family subsequently renewed the lease through November 30, 2018. In July 2018, S.A. left the Mansfield Village apartment and moved into her cousin's, X.S., home in Hackettstown. She remained there until March 2019.

In March 2019, the Director of State Aid Entitlements and Payments at the New Jersey Department of Education determined that Hackettstown was responsible for E.N.'s tuition for the 2018-2019 school year because her mother resided in Hackettstown on October 15, 2018.[1] In July 2019, the Deputy

_____

[1] N.J.A.C. 6A:23A-19.2 sets forth regulations for determining the district of residence for students placed in private schools for students with disabilities. N.J.A.C. 6A:23A-19.2(a) and (b) state that the present district of residence for children placed by a State agency in a private school for students with

Assistant Commissioner for the Office of School Finance affirmed this determination. Hackettstown did not appeal this decision. Instead, it emailed the Department of Education's Office of Fiscal and Data Services, suggesting that S.A. might have "doubled-up" at her sister's residence in Mount Olive. The Office of School Finance indicated that such an arrangement would render S.A. "homeless" and E.N. might then be eligible for services under the McKinney-Vento Homelessness Assistance Act.[2]

In August 2020, Bancroft corresponded with the Warren County Office of Education regarding E.N.'s outstanding tuition. On August 26, 2020, the Warren County Office of Education, through Special Education Specialist ("SES") Tania Mongioi, emailed a response to both Hackettstown and Warren Hills school districts, with a copy to Interim Executive County Superintendent ("IECS") Rosalie Lamonte, stating that "Warren Hills would be [the] financially responsible district for [E.N.'s] tuition and transportation [for the period between] July 2018 [and] January 2020." The email further noted that "[i]f there [was] no additional information [with regards to this matter], then this [was] the

---

disabilities "means the New Jersey district of residence of the child's parent(s) or guardian(s) as of the last school day prior to October 16."

[2] 42 U.S.C. § 11431.

Warren County office's decision" and advised the parties that "all county decisions may be appealed to Trenton." Warren Hills did not appeal.

On January 19, 2021, the ICES issued a formal letter reiterating the August 2020 determination and expanding Warren Hills' financial responsibility to include the 2018-2019, 2019-2020 and 2020-2021 school years.

On April 16, 2021, Warren Hills appealed this determination and the matter was transmitted to the Office of Administrative Law as a contested case. Hackettstown argued that Warren Hills' petition was time-barred under N.J.A.C. 6A:3-1.3(i), since it was not filed within ninety days of the August 26, 2020 email, which Hackettstown contended established the date of a valid homeless determination.

The administrative law judge ("ALJ") issued an initial decision finding that the IECS was the only person with authority to make the homeless determination. The ALJ recommended reversing the IECS's conclusion and finding Hackettstown to be responsible for E.N.'s tuition from 2018 forward because S.A.'s residence in Hackettstown was "fixed, regular, and adequate" and she intended to remain there indefinitely.

A-1153-24

Hackettstown filed exceptions. In November 2024, the Commissioner adopted the ALJ's conclusions in part, and modified the initial decision. As to the timeliness argument, the Commissioner stated:

> Warren Hills' appeal was timely filed. Pursuant to N.J.A.C. 6A:17-2.7, a determination of [being unhoused] is made by the ECS; the ECS's determination is then appealable to the Commissioner. Accordingly, Warren Hills' timeline to file its petition of appeal began running only when Warren Hills received Dr. Lamonte's January 19, 2021[,] determination; the earlier correspondence from Hearn and Mongioi is irrelevant. The petition of appeal was filed on April 16, 2021, less than [ninety] days after Dr. Lamonte's determination, and was therefore timely pursuant to N.J.A.C. 6A:3-1.3(i).

The Commissioner further concluded "although the Commissioner modifies the Initial Decision to conclude that S.A. was homeless after X.S.'s mother-in-law moved into the Hackettstown home, the Commissioner . . . concurs with the ALJ that Hackettstown remained responsible for the costs of E.N.'s education for the 2019-2020 and 2020-2021 school year."

Hackettstown appealed and now argues the Commissioner's decision should be reversed since it was arbitrary, capricious, and unreasonable, lacked sufficient support in the record, or represented an erroneous legal interpretation. We disagree.

## II.

Our review of an administrative agency's final determination is deferential. In re Adoption of Amendments, 435 N.J. Super. 571, 582 (App. Div. 2014). We "afford[] a 'strong presumption of reasonableness' to an administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014) (quoting City of Newark v. Nat. Res. Council, Dep't of Envtl. Prot., 82 N.J. 530, 539 (1980)). An agency's determination must be upheld "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)). However, we do not defer to an agency's statutory interpretation nor to its conclusion of a strict legal issue. See Ardan v. Bd. of Review, 231 N.J. 589, 604 (2018) (quoting US Bank, N.A. v. Hough, 210 N.J. 187, 200 (2012)). Those we review de novo. Ibid.

Hackettstown does not dispute its financial responsibility for E.N.'s tuition for the 2018-2019 to 2020-2021 school years. It limits its appeal solely to the timeliness of the filing of Warren Hills' appeal petition. Hackettstown contends that the Commissioner and the ALJ erred in finding Warren Hills' appeal timely, arguing that the August 26, 2020, email from the Warren County SES was a

valid homeless determination that triggered the ninety-day appeal period under N.J.A.C. 6A:3-1.3(i), and that the later January 19, 2021, letter from the ICES did not restart this period. We disagree.

N.J.A.C. 6A:17-2.7 provides the process for resolving disputes that arise concerning education of unhoused students. Under that provision, when a funding or residence dispute arises between school districts, and those entities are unable to resolve the matter, the disputing parties "shall immediately notify the [ECS]," who shall quickly decide the status of the child. N.J.A.C. 6A:17-2.7(b). If a party is dissatisfied with the ECS's decision, it may appeal to the Commissioner. N.J.A.C. 6A:17-2.7(b)(2).

N.J.A.C. 6A:3-1.3(i) addresses the initiation of a contested case before the Commissioner:

> The petitioner shall file a petition no later than the [ninetieth] day from the date of receipt of the notice of a final order, ruling or other action by the district board of education, individual party, or agency, which is the subject of the requested contested case hearing. This rule shall not apply in instances where a specific statute, regulation or court order provides for a period of limitation shorter than [ninety] days for the filing of a particular type of appeal.

When interpreting a statute, we "must presume that every word in [the] statute has meaning and is not mere surplusage." Cast Art Indus., LLC v. KPMG

A-1153-24

LLP, 209 N.J. 208, 222 (2012) (quoting In re Att'y Gen.'s Directive on Exit Polling: Media & Non-Partisan Pub. Int. Grps., 200 N.J. 283, 297-98 (2009)). Additionally, we "cannot presume the Legislature 'intended a result different from what is indicated by the plain language . . . .'" Simadiris v. Paterson Pub. Sch. Dist., 466 N.J. Super. 40, 49 (App. Div. 2021) (quoting Tumpson v. Farina, 218 N.J. 450, 467-68 (2014)). Nor can we "engage in conjecture or surmise which will circumvent the plain meaning of the act." DiProspero v. Penn, 183 N.J. 477, 492 (2005) (quoting In re Closing of Jamesburg High Sch., 83 N.J. 540, 548 (1980)).

Here, the plain language of the statute indicates that "[t]he [ECS] shall make a determination" as to which school district is the district of residence. N.J.A.C. 6A:17-2.7(b). In fact, there is no provision in the regulation which states that someone other than the ECS can render a legally enforceable homelessness determination.

In contrast, the statute permits the "chief school administrator's designee(s)" to act on behalf of the chief school administrators, as well as the Department's McKinney Vento Homeless Education Coordinator designee to act on behalf of the Coordinator. Ibid.

9

When interpreting a statute, we also review the language "in context with related provisions so as to give sense to the legislation as a whole." DiProspero, 183 N.J. at 492. "For instance, '[w]here [the Legislature] includes particular language in one section of the statute but omits it in another section of the same [a]ct, it is generally presumed that [the Legislature] acts intentionally and purposely in the disparate inclusion or exclusion.'" Shipyard Assocs., LP v. City of Hoboken, 242 N.J. 23, 38 (2020) (alterations in the original) (quoting DCPP v. R.L.M., 236 N.J. 123, 148 (2018)). Thus, if the Legislature wanted to authorize SESs or other ECS designees to issue such determinations, it would have included such language in the regulation. See Simadiris, 466 N.J. Super. at 49. Given this regulatory framework, the SES was not empowered to make homelessness determinations, and the IECS, by virtue of her position, was the sole authority given the power to resolve the dispute about which district was responsible for the payment of E.N.'s Bancroft tuition.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-1153-24